# United States District Court
# District of Massachusetts

HELGE MANAGEMENT, INC.,
    Plaintiff,

    v.                                        CIVIL ACTION NO.11-10299-RBC[1]

DELTA AIR LINES, INC.,
    Defendant.

## *MEMORANDUM AND ORDER ON DELTA AIR LINES, INC.'S MOTION FOR SUMMARY JUDGMENT (#16)*

COLLINGS, U.S.M.J.

### *I. Introduction*

On December 21, 2010, the plaintiff, Helge Management, Inc. ("Helge"), purchased a ticket for its president, Oleg Uritsky ("Uritsky"), to travel on a flight operated by the defendant, Delta Air Lines, Inc. ("Delta"). The flight ended up being cancelled thereby resulting in a delay in Uritsky's travel plans.

---

[1] With the parties' consent, on May 25, 2011, this case was assigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c).

As a result of this delay, Helge filed a three-count complaint (#3) in the Boston Municipal Court seeking damages against Delta for breach of contract, unfair trade practices, and negligence. The action was removed to the federal court in February of 2011 (#1), and after removal, Counts II and III of the complaint were dismissed. (Electronic Order entered 06/08/2011) Count I was allowed to proceed as a breach of contract claim pursuant to the Montreal Convention, and a discovery schedule was set. (Electronic Order entered 06/08/2011).

When discovery was completed, Delta filed a motion for summary judgment on the breach of contract claim (#16) together with a memorandum of law with exhibits (#17) and a concise statement of facts (#18) in support thereof. Helge, in turn, submitted a memorandum of law in opposition to Delta's Rule 56 motion with an attached affidavit (#20) to which the defendant then filed a reply (#22).

Oral argument was heard on March 7, 2012, and the parties were ordered to submit supplemental memoranda. (Electronic Order entered 03/07/2012). The defendant's supplemental memorandum (#24) included an attached declaration by Kimberly Neale (the "Neale Declaration"). In

addition its own supplemental memorandum (#25), Helge filed a motion to strike the Neale Declaration (#26) to which Delta submitted an opposition (#28).

On May 15, 2012, the Court issued an Electronic Order denying the plaintiff's motion to strike the Neale Declaration (#26) and granting Delta the opportunity to file an affidavit to clarify the summary judgment record. (Electronic Order entered 05/15/2012) In response, the defendant filed a Second Neale Declaration (#32). After being granted leave by the Court (Electronic Order entered 06/20/2012), Helge submitted a supplemental memorandum in opposition to the summary judgment motion (#33).

At this juncture, the record is complete, and the motion for summary judgment stands ready for decision.

## II. The Facts

Because they are undisputed,[2] the facts shall be drawn largely verbatim, albeit without quotation marks, from Delta's Local Rule 56.1 concise statement

---

[2] Helge has failed to comply with Local Rule 56.1 in that the plaintiff has not filed "a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation." L.R. 56.1. This failure has consequences, as the Rule further provides that "[m]aterial facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties." L.R. 56.1.

of material facts. (#18)  The facts shall be supplemented, as necessary, from other sources.

Helge purchased a business class ticket from Delta for Uritsky to fly round-trip from Boston to Moscow, with a connection at Atlanta's Hartsfield-Jackson International Airport. (#3 ¶ 4; #4 ¶ 4[3])  The tickets were purchased with points. (#3 ¶ 8; #4 ¶ 8)  Delta documented Uritsky's international travel which included keeping his Passenger Name Record ("PNR") and a mechanical log ("log") for the aircraft.[4] (#18 ¶ 1)

On December 29, 2010, Uritsky flew from Boston to Atlanta and was scheduled to depart on the 4:30 P.M. flight from Atlanta to Moscow, arriving at 11:00 A.M. on December 30, 2010 ("Flight 46").  (#3 ¶ 10[5]; #18 ¶ 2)  Prior to boarding Flight 46, Delta made multiple delay announcements and, after approximately three hours, Delta informed the passengers that Flight 46 had a major mechanical failure and that they were to proceed to another gate to

---

[3] In its answer, Delta denied the facts as stated, but admitted Uritsky was a ticketed passenger traveling from Boston, stopping in Atlanta, to Moscow and back to Atlanta thence to Boston. (#4 ¶ 4)  The parties have stipulated that Uritsky was a business class passenger with Delta at the time of the delay at issue. (#30)

[4] Delta has an obligation to maintain these records, and they are kept in the normal course of business.

[5] Delta again denies the allegation as stated in the complaint, but admits that Uritsky was a ticketed passenger flying from Boston and due to arrive in Moscow on December 30, 2010. (#4 ¶ 10)

board a different flight (the "auxiliary flight"). (#3 ¶¶ 12-13[6]; #18 ¶¶ 3-4) Thirty minutes after the auxiliary flight was scheduled to depart, Delta announced that the pilot crew had "timed out," meaning if they were to continue to Moscow at that point, the pilot crew would have exceeded the permitted flying time allowed under federal regulation. (#3 ¶ 14[7]; #18 ¶ 5) At 10:00 P.M., the passengers were informed that no alternative pilot crew was available. (#3 ¶ 17[8]; #18 ¶ 6) Delta gave Uritsky vouchers for a hotel stay and food, and placed him on a flight from Atlanta to Moscow scheduled for the following day ("Flight 9862"). (#3 ¶¶ 18-19[9]; #18 ¶¶ 7-8)

The delay in this case was caused in part by an unforeseen mechanical failure, namely, inoperative emergency lighting on the aircraft, lighting required by federal regulations. (#18 ¶ 9) Repairs involved a broken wire

---

[6] Delta again denies the allegation as stated in the complaint, but admits that Uritsky was a ticketed passenger flying from Boston, stopping in Atlanta, to Moscow and back to Atlanta thence to Boston. (#4 ¶¶ 13-14)

[7] Delta again denies the allegation as stated in the complaint, but admits that Uritsky was a ticketed passenger flying from Boston, stopping in Atlanta, to Moscow and back to Atlanta thence to Boston. (#4 ¶ 14)

[8] Delta again denies the allegation as stated in the complaint, but admits that Uritsky was a ticketed passenger flying from Boston, stopping in Atlanta, to Moscow and back to Atlanta thence to Boston. (#4 ¶ 17)

[9] Delta again denies the allegation as stated in the complaint, but admits that Uritsky was provided with the vouchers to which he was entitled under his contract with the defendant and, further, that Uritsky was due to arrive in Moscow at 11:00 A.M. on December 30, 2010 but actually arrived twenty-six minutes late. (#4 ¶¶ 18-19)

behind a sidewall panel. (#18 ¶ 9) Because the issue was as complex as it was, the repairs required removing panels and investigating wiring, all of which took longer than originally estimated. (#18 ¶ 9) At first the repairs only partially resolved the issue, but the maintenance team then had to address a power supply problem which extended the delay. (#18 ¶ 9) Throughout the process every effort was made by the maintenance team to repair the problem as quickly as possible and at the same time follow all Delta and FAA-mandated procedures to ensure compliance with the law and safety of the flight. (#18 ¶ 10)

Because the original repairs did not solve the problem, the technicians later returned to solve the problem. (#18 ¶ 11) Their second effort meant the required maintenance time would adversely affect the pilot crew's ability to fly, because if the flight continued to Moscow after the technicians solved the mechanical problem, the pilot crew would have been on duty beyond the maximum flight time allowed by the FAA regulations. (#18 ¶ 11) The inability of the pilot crew to exceed that maximum flying time meant the flight had to be cancelled in order to change the crew and, unfortunately, a replacement pilot crew was not available at that time in Atlanta. (#18 # 11)

In response to the Court's inquiry, Delta undertook a review of the PNRs

of all one hundred and eighty-six passengers, including Uritsky, traveling on the December 29, 2010 flight from Atlanta to Moscow. (#32 ¶ 3)  The first page of Uritsky's PNR shows his flight was cancelled at 9:49 P.M., and the fourth page shows that he was re-booked for the following day because there were no alternative flights for him that evening. (#23, Exh. 1 ¶ 10)  In December, 2010, Delta used an automated re-booking system, IROP Passenger Rebook System ("IPRS"), for irregular operations ("IROPs") including cancellations such as Uritsky's flight. (#23, Exh. 1 ¶ 6; #32 ¶ 4)  When flights were cancelled, the IPRS instantly engaged and searched for the next available flights with any carrier, Delta or any others, on which Delta could re-book its passengers so as not to delay their travel. (#24, Exh. 1 ¶ 7)  Had alternative flight accommodations been available for Uritsky to travel that evening, the IPRS would have re-booked him on such a flight. (#24, Exh. 1 ¶ 9)  As a result of the review of the PNRs, it is clear that no passenger on Uritsky's flight was re-booked on another carrier's flight leaving Atlanta and going to Moscow on December 29, 2010. (#32 ¶ 5)

### III. Summary Judgment Standard

The purpose of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Rojas-Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 394 F.3d 40, 42 (1 Cir., 2005) (internal quotations marks and citation omitted). When considering a motion for summary judgment, "a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).[10] The moving party bears the initial burden of asserting the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1 Cir., 2003)(citations omitted); *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1 Cir., 2010).

> Once the moving party alleges the absence of all meaningful factual disputes, the non-moving party

---

[10] Rule 56 was amended effective December 1, 2010. The summary judgment standard is now set forth in Rule 56(a), but "[the standard for granting summary judgment remains unchanged." *Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 35 n.4 (1 Cir., 2011).

> must show that a genuine issue of material fact exists. This showing requires more than the frenzied brandishing of a cardboard sword. The non-moving party must point to facts memorialized by materials of evidentiary quality and reasonable inferences therefrom to forestall the entry of summary judgment.

*Certain Interested Underwriters at Lloyd's, London v. Stolberg*, 680 F.3d 61, 65 (1 Cir., 2012)(internal citations and quotation marks omitted); *Fontánez-Núñez v. Janssen Ortho LLC*, 447 F.3d 50, 54-55 (1 Cir., 2006).

In determining whether summary judgment is proper, "a court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor." *Clifford v. Barnhart*, 449 F.3d 276, 280 (1 Cir., 2006); *Guay v. Burack*, 677 F.3d 10, 13 (1 Cir., 2012). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 586-87 (1986))(further internal quotation marks omitted).

## IV. Discussion

The plaintiff's sole remaining claim, Count 1 for breach of contract, is governed by the Montreal Convention (the "Convention"). (Electronic Order entered 06/812011)  The Convention applies to "all international carriage of persons, baggage, or cargo." 1999 WL 33292734, Art 1.  Article 19 of the Convention ("Article 19") provides the exclusive remedy for damages in instances of delay. *El Al Israel Airlines, Ltd.* v. *Tsui Yuan Tseng,* 525 U.S. 155, 161 (1999); *Cohen v. Delta Air Lines, Inc.*, 751 F. Supp.2d 677, 680 (S.D.N.Y., 2010).  Article 19 states that

> [t]he carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo. Nevertheless, the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures.

Montreal Convention, 1999 WL 33292734, Art. 19.

In order to satisfy the standard of undertaking reasonable measures, the defendant carrier need only show that it took "'all precautions that in sum are appropriate to the risk, i.e., measures reasonably available to defendant and

reasonably calculated, in cumulation, to prevent the subject loss.'" *Palma v. American Airlines, Inc.,* 2010 WL 5140592, at *5 (S.D. Fla., Dec. 9, 2010)(quoting *Mfrs. Hanover Trust Co. v. Alitalia Airlines*, 429 F. Supp. 964, 967 (S.D.N.Y. Apr. 13, 1977)(further citation omitted)); *Verdesca v. American Airlines, Inc.*, 2000 WL 1538704, at *3 (N.D. Tex., Oct. 17, 2000); *Obuzor v. Sabena Belgian World Airlines*, 1999 WL 223162, at *1 (S.D.N.Y., Apr. 16, 1999). "The failure to take any particular precaution that might have prevented the loss does not necessarily prevent the carrier from relying on this defense; not every possible precaution must be taken." *Palma,* 2010 WL 5140592, at *5.

To meet its burden, Delta has produced evidence to show the measures it took to avoid damage to Helge as follows: Flight 46 was initially delayed due to the discovery of a problem with lighting required to be in operation by federal regulations, and thus requiring repairs to be done by a maintenance team. Upon beginning repairs, the problem was found to be more complex due to a broken wire, thus requiring Flight 46 to be taken out of service. An auxiliary flight was substituted for Flight 46, but required an extensive "walk

around" to ensure that the aircraft was safe for an overseas flight.[11] During the delay time, the pilot crew timed out and thus would not be able to provide service to Moscow without violating the maximum time permitted to fly in a given period, established in 14 C.F.R. § 121.[12] A replacement crew was not available at the time.

With regard to re-booking, Delta has established that, at the time in question, it utilized an automated re-booking system, IPRS, that instantly engaged upon the cancellation of flight and searched for the next available flight, through Delta or any other carrier, on which Delta could re-book passengers to avoid further delay. There were no feasible alternative flight accommodations to Moscow available for Uritsky on December 29, 2010, and, in fact, no passengers were re-booked to Moscow leaving that night. Delta re-booked Uritsky on a flight to Moscow leaving the following day.

Delta acted reasonably in attempting to fix the mechanical problems on Flight 46 prior to cancelling the flight, and in attempting to find a new flight

---

[11] Helge contests Delta's explanation of mechanical problems of Flight 46 by stating that such facts are still a mystery and thus should be left to the jury. (#20 at 2-3) As noted earlier, however, such a contention is unavailing since the facts have been deemed admitted.

[12] That Delta may have cited the cited incorrect regulation, 14 C.F.R. § 121.470 rather than 14 C.F.R. § 121.480, does not raise a genuine issue of material fact for trial. Again, it has been deemed admitted that the flight crew had timed out.

crew prior to cancelling the auxiliary flight. *See Lee v. American Airlines, Inc.*, 2004 WL 2624647, at *4 (N.D. Tex., Nov. 17, 2004). Based on the evidence, Delta has met its burden of showing that it took all measures reasonably required to avoid damage to Helge by employing the IPRS. No flights were available to Moscow after the cancellation of Flight 46 at 9:49 P.M. on December 29, 2010, and Delta took the reasonable measures of providing Uritsky with hotel and food vouchers, and re-booking him on a flight to his destination the following day.

Helge asserts that there were four flights that left Atlanta for Moscow on December 29, 2010, during the hours between Uritsky's scheduled departure at approximately 4:30 P.M. and the time Flight 46 was ultimately cancelled at approximately 10:00 P.M. (#33 at 3-4) Specifically, Helge asserts that the four flights on other airlines left at 6:20 P.M. (Lufthansa), 7:50 P.M. (KLM Royal Dutch), 9:10 P.M. (Air France) and 9:20 P.M. (British Airways). (#33 at 3-4)[13] Since all of these flights left Atlanta before Flight 46 was cancelled, it is the plaintiff's position that Delta should have re-booked Uritsky on one of those four flights before those flights departed rather than choosing to attempt

---

[13] The plaintiff offers no evidence to suggest that any Moscow-bound flights were scheduled to leave from Atlanta at any time after 10:00 P.M. that day.

to make the mechanical repairs on the aircraft and then, thereafter, attempting to secure a replacement pilot crew. Helge argues that a question of fact exists for the jury, to wit, whether in failing to re-book Uritsky on one of these four flights, Delta failed to take all reasonable measures.

The plaintiff has cited no support for its contention that in failing to re-book Uritsky on an alternate flight to Moscow prior to the time that Uritsky's flight was cancelled, Delta failed to take all reasonable measures. Case law reaches the opposite conclusion, with the *Lee* decision being right on point. *Lee*, 2004 WL 2624647, at *4. In *Lee*, the plaintiffs sued American Airlines for damages caused when a flight from New York to London was cancelled. *Lee*, 2004 WL 2624647, at *1. The flight, set to depart at 6:35 P.M. on May 18, 2001, was initially delayed due to malfunctioning lights. *Lee*, 2004 WL 2624647, at **1-2. When the mechanical problems could not be fixed, an alternate aircraft and crew had to be secured. *Lee*, 2004 WL 2624647, at *2. The alternate aircraft then developed a computer system malfunction, which, after several attempts could not be fixed, and the flight was finally cancelled at 1:10 A.M. on May 19, 2001. *Lee*, 2004 WL 2624647, at *2. The plaintiffs claimed, *inter alia,* that American Airlines should have re-booked them on a

United Airlines flight leaving New York for London at 8:50 P.M. on May 18, 2001. *Lee*, 2004 WL 2624647, at *4. The Court was not persuaded by this argument, stating:

> The evidence indicates that in order for Plaintiffs to make this flight, American would have had to book the seats early enough to give Plaintiffs enough time to get their bags, transfer terminals by bus, check in, and present themselves at the gate within United's 45 minute deadline….For this to happen, American would have had to choose to book Plaintiffs on the United flight rather than attempt to make repairs and secure another aircraft. The Court finds that American acted reasonably in attempting to repair [the initial aircraft] and in attempting to secure another American crew and aircraft rather than immediately — upon notice of a delay — transferring all passengers to another airline's flight.

*Lee*, 2004 WL 2624647, at *4.

And so it is here. The Court finds that Delta acted reasonably in attempting to repair the lighting problems on Flight 46 and then in arranging for an auxiliary flight and trying to find an available pilot crew before it attempted to re-book the passengers on alternate flight arrangements. On the summary judgment record in this case, there was no duty to re-book until it was clear that Flight 46 had to be cancelled. It was only after cancellation that

the duty to try to re-book passengers became imperative, but by that time, there were no flights leaving on that date.

### V. Conclusion and Order

Based on the undisputed facts, the Court rules that Delta "took all measures that could reasonably be required to avoid the damage" and, consequently, is entitled to the entry of judgment in its favor as a matter of law. Accordingly, it is ORDERED that Delta Air Lines, Inc.'s Motion For Summary Judgment (#16) be, and the same hereby is ALLOWED. Judgment shall enter for the defendant.

*/s/ Robert B. Collings*
ROBERT B. COLLINGS
United States Magistrate Judge

July 19, 2012.